IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Alterna Tax Asset Group, LLC, | ) |
|                       Plaintiff, | ) C/A No. 0:17-0913-MBS |
| vs. | ) |
| York County; York County Treasurer; York County Delinquent Tax Collector; Robert Clay Sparrow; Mickey Crowe; Fort Mill Holdings, LLC; and David Baucom, | ) **ORDER AND OPINION** |
|                       Defendants. | ) |

On April 7, 2017, Plaintiff Alterna Tax Asset Group, LLC filed a complaint pursuant to diversity jurisdiction under § 28 U.S.C. § 1332, seeking to vacate a tax sale on certain property in York County, South Carolina. This matter is before the court on motion to dismiss filed by Defendants Robert Clay Sparrow ("Sparrow") and Mickey Crowe ("Crowe") on May 24, 2017; motion to dismiss filed by Defendants Fort Mill Holdings, LLC ("Fort Mill") and David Baucom ("Baucom") on May 25, 2017; and motion to dismiss filed by Defendants York County, York County Treasurer, and York County Delinquent Tax Collector (together, the "York County Defendants") on May 30, 2017. Plaintiff filed a consolidated response in opposition to Defendants motions to dismiss on June 21, 2017.

FACTS

Certain real property in York County, South Carolina (the "Property"), was conveyed by Sparrow and Crowe to Fort Mill on December 1, 2011, for a purchase price of $907,300. Baucom

was guarantor on a note securing the Property, which was owner-financed by Sparrow and Crowe. It appears that Fort Mill ceased making payments to Sparrow and Crowe in or around June 2012. As a result, Sparrow and Crowe commenced foreclosure proceedings. On October 1, 2014, Crowe assigned all interest in the Property to Sparrow. Sparrow, Fort Mill, and Baucom entered into mediation and settled the foreclosure matter. On March 29, 2016, the Honorable S. Jackson Kimball entered a judgment against Fort Mill and Baucom in accordance with the terms of the settlement agreement.

It further appears that Fort Mill failed to pay taxes on the Property for tax year 2014. As a result, the York County Treasurer issued an execution notice. In due course, the York County Delinquent Tax Collector issued a notice of levy as well as a notice of final redemption to Fort Mill. Fort Mill and Baucom agreed that any overage remaining from a tax sale after payment of the past due taxes would be paid to Sparrow and applied toward the amount due on the judgment. Plaintiff subsequently was deeded the Property after a public sale for a purchase price of $610,000. The within action was filed before any overage on the tax sale could be forwarded to Sparrow.

Plaintiff contends that the procedures followed by the York County Defendants did not comply with the statutory mandates of S.C. Code Ann. §§ 12-51-40(c) and -40(b), so that the tax sale is null and void. Specifically, Plaintiff asserts that (1) the York County Treasurer issued a facially defective "Execution Notice for Delinquent Property Taxes" to the York County Delinquent Tax Collector for the 2014 real property taxes owed on the Property (ECF No. 1, ¶ 16); (2) the Execution Notice was mailed to Fort Mill was returned improperly signed by Baucom rather than the registered agent for Fort Mill (Id. ¶¶ 17-22); (3) the York County Delinquent Tax Collector issued a facially defective "Notice of Levy" to Fort Mill (Id. ¶¶ 23-25); (4) the York County Delinquent Tax Collector

mailed to Fort Mill a facially defective "Notice of Final Redemption for Property Sold at Delinquent Tax Sale (Id. ¶ 27), which Notice was sent to an improper address and returned by the United States Post Office as undeliverable as addressed (Id. ¶ 33-34).

Plaintiff contends the monies it paid for the winning bid should be returned to it in light of the defective nature of the delinquent tax sale. Plaintiff seeks (1) to quiet title under S.C. Code Ann. § 12-61-10 by vacating the tax sale (First Cause of Action); (2) a declaratory judgment that the tax sale is null and void (Second Cause of Action); (3) injunctive relief prohibiting Defendants from transferring the purchase price of $610,000 to any entity other than Plaintiff (Third Cause of Action); and (4) declaratory relief requiring Defendants to disgorge the monies paid by Plaintiff to obtain a tax deed to the Property (Fourth Cause of Action).

## APPLICABLE LAW

A.  Procedure for Collection of Property Taxes.

S.C. Code Ann. § 12-51-40 provides:

After the county treasurer issues his execution against a defaulting taxpayer in his jurisdiction, as provided in Section 12-45-180, signed by him or his agent in his official capacity, directed to the officer authorized to collect delinquent taxes, assessments, penalties, and costs, requiring him to levy the execution by distress and sale of the defaulting taxpayer's estate, real or personal, or both, or property transferred by the defaulting taxpayer, the value of which generated all or part of the tax, to satisfy the taxes, assessments, penalties, and costs, the officer to which the execution is directed shall:

(a) On April first or as soon after that as practicable, mail a notice of delinquent property taxes, penalties, assessments, and costs to the defaulting taxpayer and to a grantee of record of the property, whose value generated all or part of the tax. The notice must be mailed to the best address available, which is either the address shown on the deed conveying the property to him, the property address, or other corrected or forwarding address of which the officer authorized to collect delinquent taxes, penalties, and costs has actual knowledge. The notice must specify that if the taxes, penalties, assessments, and costs are not paid, the property must be advertised and

sold to satisfy the delinquency.

(b)  If the taxes remain unpaid after thirty days from the date of mailing of the delinquent notice, or as soon thereafter as practicable, take exclusive possession of the property necessary to satisfy the payment of the taxes, assessments, penalties, and costs. In the case of real property, exclusive possession is taken by mailing a notice of delinquent property taxes, assessments, penalties, and costs to the defaulting taxpayer and any grantee of record of the property at the address shown on the tax receipt or to an address of which the officer has actual knowledge, by "certified mail, return receipt requested-restricted delivery" pursuant to the United States Postal Service "Domestic Mail Manual Section S912".  If the addressee is an entity instead of an individual, the notice must be mailed to its last known post office address by certified mail, return receipt requested, as described in Section S912.  In the case of personal property, exclusive possession is taken by mailing the notice of delinquent property taxes, assessments, penalties, and costs to the person at the address shown on the tax receipt or to an address of which the officer has actual knowledge.  All delinquent notices shall specify that if the taxes, assessments, penalties, and costs are not paid before a subsequent sales date, the property must be duly advertised and sold for delinquent property taxes, assessments, penalties, and costs. The return receipt of the "certified mail" notice is equivalent to "levying by distress".

(c)  If the "certified mail" notice has been returned, take exclusive physical possession of the property against which the taxes, assessments, penalties, and costs were assessed by posting a notice at one or more conspicuous places on the premises, in the case of real estate, reading: "Seized by person officially charged with the collection of delinquent taxes of (name of political subdivision) to be sold for delinquent taxes", the posting of the notice is equivalent to levying by distress, seizing, and taking exclusive possession of it, or by taking exclusive possession of personalty. In the case of personal property, the person officially charged with the collection of delinquent taxes is not required to move the personal property from where situated at the time of seizure and further, the personal property may not be moved after seized by anyone under penalty of conversion unless delinquent taxes, assessments, penalties, and costs have been paid. Mobile homes are considered to be personal property for the purposes of this section unless the owner has de-titled the mobile home according to Section 56-19-510.

(d)  The property must be advertised for sale at public auction. The advertisement must be in a newspaper of general circulation within the county or municipality, if applicable, and must be entitled "Delinquent Tax Sale". It must include the delinquent taxpayer's name and the description of the property, a reference to the county auditor's map-block-parcel number being sufficient for a description of realty. The advertising must be published once a week before the legal sales date for three consecutive weeks for the sale of real property, and two consecutive weeks for the

sale of personal property. All expenses of the levy, seizure, and sale must be added and collected as additional costs, and must include, but not be limited to, the expenses of taking possession of real or personal property, advertising, storage, identifying the boundaries of the property, and mailing certified notices. When the real property is divisible, the tax assessor, county treasurer, and county auditor may ascertain that portion of the property that is sufficient to realize a sum upon sale sufficient to satisfy the payment of the taxes, assessments, penalties, and costs. In those cases, the officer may partition the property and furnish a legal description of it.

(e) As an alternative, upon approval by the county governing body, a county may use the procedures provided in Chapter 56, Title 12 and Section 12-4-580 as the initial step in the collection of delinquent taxes on real and personal property.

(f) For the purpose of enforcing payment and collection of property taxes when the true owner is unknown because of the death of the owner of record and the absence of probate administration of the decedent's estate, the property must be advertised and sold in the name of the deceased owner of record.

B. <u>Construction of S.C. Code Ann. § 12-51-40</u>.

Tax sales must be conducted in strict compliance with statutory requirements. <u>King v. James</u>, 694 S.E.2d 35, 39 (S.C. Ct. App. 2010)(citing <u>In Re Ryan Investment Co.</u>, 517 S.E.2d 692, 693 (S.C. 1999)). All requirements of the law leading up to tax sales, which are intended for the protection of the taxpayer against surprise or the sacrifice of his property, are to be regarded as mandatory and are to be strictly enforced. <u>Id.</u> at 40 (quoting <u>Donohue v. Ward</u>, 378 S.E.2d 261, 265 (S.C. Ct. App.1989)). Even actual notice is insufficient to uphold a tax sale absent strict compliance with statutory requirements. <u>Id.</u> (quoting <u>Ryan Inv. Co.</u>, 517 S.E.2d at 693.) Failure to give the required notice of a tax sale is a fundamental defect in the tax sale proceedings that renders the proceedings absolutely void. <u>Id.</u> (quoting <u>Rives v. Bulsa</u>, 478 S.E.2d 878, 881 (S.C. Ct. App.1996).

C. <u>Persons Who May Institute Action to Clear Tax Title</u>.

S.C. Code Ann. § 12-61-10 provides:

> Any county of this State, the forfeited land commission or other similar authority of any such county, any person or the executors, administrators, successors, assigns or grantees thereof, which has purchased at or acquired through a tax sale and obtained title to any real or personal property, may bring an action in the court of common pleas of such county for the purpose of barring all other claims thereto.

## DISCUSSION

In their motions to dismiss, Sparrow and Crowe, as well as Fort Mill and Baucom, argue that Plaintiff lacks Article III standing and that the causes of action do not state plausible claims for relief. See Fed. R. Civ. P. 12(b)(1), (6). The York County Defendants assert in their motion to dismiss that the proper jurisdiction for Plaintiff to assert its claim is in the Court of Common Pleas for York County, South Carolina. The York County Defendants further contend that Plaintiff's demand to invalidate the tax sale is a remedy not available under section 12-61-10, so that Plaintiff fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1), (3), and (6). The court declines to address the motions to dismiss and instead dismisses the case for lack of subject matter jurisdiction.

Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it. Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (citing Arbaugh v. Y&H Corp, 546 U.S. 500, 514 (2006)). Upon review of the allegations of the complaint, the court directed the parties to brief the issue of whether the within action is prohibited by the Tax Injunction Act, 28 U.S.C. § 1341, which provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

On November 28, 2017, Sparrow, Crowe, Fort Mill, and Baucom; Plaintiff; and the York County Defendants, respectively, filed responses to the court's order. Plaintiff filed a consolidated

response to Defendants' briefs on December 11, 2017. Defendants all assert that the Tax Injunction Act bars the complaint. Plaintiff asserts that the Tax Injunction Act is inapplicable because it is not a taxpayer disputing taxes owed, but a third party seeking refund of the purchase price paid by Plaintiff to York County for the Property. However, the dispositive issue is whether the court's granting of the relief sought by Plaintiff would reduce tax revenue collected by York County by requiring it to disgorge funds from the tax sale that satisfied the tax levy.

The Tax Injunction Act constitutes a "broad jurisdictional barrier." Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 470 (1976). Like its federal counterpart, the Anti-Injunction Act, the Tax Injunction Act ensures that states are able to "'assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference.'" Gwozdz v. HealthPort Techs. LLC, 846 F.3d 738, 742 (4th Cir. 2017) (quoting Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974)). There are exceptions; for example, under Hibbs v. Winn, 542 U.S. 88, 106 (2004), third-party challenges to the validity of state taxing schemes fall outside the ambit of the Tax Injunction Act if the challenges, were they to prove successful, would result in the increase of the tax liabilities of others, and therefore an increase in tax revenues to the state. I.L. v. Alabama, 739 F.3d 1273, 1283 (11th Cir. 2014) (citing cases). In this case, however, Plaintiff's success on the merits would require York County to refund not simply the monies spent by Plaintiff to obtain the Property, as Plaintiff contends, but to disgorge the past-due taxes paid from the tax sale.

The court concludes Plaintiff's challenge to the tax sale may be remedied in state court pursuant to S.C. Code Ann. § 12-61-10.

## CONCLUSION

Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

January 11, 2018